**GIBSON DUNN**

Matthew D. McGill
Partner
T: +1 202.887.3680
M: +1 202.407.2288
mmcgill@gibsondunn.com

September 19, 2024

VIA CM/ECF

Mark Langer
Clerk of Court
U.S. District Court for the District of Columbia
E. Barrett Prettyman U.S. Courthouse and William B. Bryant Annex
333 Constitution Avenue, N.W.,
Washington, D.C. 20001

*Estate of Jeremy Isasdore Levin v. Wells Fargo Bank, N.A.*, Nos. 23-7080, 23-7082, Notice of Supplemental Authority

Dear Mr. Langer,

  Pursuant to Federal Rule of Appellate Procedure 28(j), I write to apprise the Court of the recent decision in *Bainbridge Fund Ltd. v. Republic of Argentina*, 102 F. 4th 464 (D.C. Cir. 2024). In *Bainbridge*, the Court addressed the scope of the FSIA's commercial activity exception, 28 U.S.C. § 1610(a). The Court confirmed that "commercial uses" should be "considered holistically and in context," and that courts should avoid using "an artificially narrow lens" to examine property. *Id.* at 469.

  Bainbridge involved a building owned by Argentina that was used to store diplomatic files, and the Court considered the use of the property within the year the attachment was filed, *id.* ("There was plainly no regular course of commercial conduct in 2022"), in addition to prior uses of the property going back many years. Ultimately, the Court held more "distant" and aberrational uses of the property—"[c]ommercial leases

**GIBSON DUNN**

September 19, 2024<br>Page 2

that ceased twenty-five years ago and two brief sale listings over a period of twenty years"—"fall far short of demonstrating commercial use." *Id.*

Bainbridge confirms that the district court's myopic focus on the blocked status of the Funds at the time of attachment was erroneous. *See* JA 426. The Funds at issue here were used to complete the purchase of an oil tanker, a quintessential commercial transaction, mere months—not even a year, let alone 25 years—before Victims obtained their attachments.

Respectfully submitted,

/s/ Matthew D. McGill

Matthew D. McGill
*Counsel for Owens, Mwila, and Khaliq Appellants*

Attachment:   *Bainbridge Fund Ltd. v. Republic of Argentina*,
              102 F. 4th 464 (D.C. Cir. 2024)

cc:   Counsel of record (via ECF)

**464**  102 FEDERAL REPORTER, 4th SERIES

a single contract pharmacy designated by the covered entity. For reasons explained, that restriction neither precludes Novartis from making a bona fide "offer" nor increases its contract "price." The restriction is also consistent with historic practices under the section 340B program. It is indistinguishable from the parallel provision adopted by United Therapeutics. And it is indistinguishable from the distribution conditions upheld by the Third Circuit in *Sanofi Aventis*. *See* 58 F.4th at 701, 706.

V

In sum, we hold that section 340B does not categorically prohibit manufacturers from imposing conditions on the distribution of covered drugs to covered entities. We further hold that the conditions at issue here do not violate section 340B on their face. We do not foreclose the possibility that other, more onerous conditions might violate the statute. Likewise, we do not foreclose the possibility that these conditions may violate section 340B as applied in particular circumstances—if, for example, HRSA could show that a specific covered entity for some reason could not supply the claims information demanded by United Therapeutics. The district court correctly set aside the enforcement letters under review, while reserving the possibility of future enforcement under theories of liability narrower than the one pressed here.

*Affirmed.*



**BAINBRIDGE FUND LTD., Appellant**

v.

**REPUBLIC OF ARGENTINA, Appellee**

No. 23-7112

United States Court of Appeals, District of Columbia Circuit.

Argued March 12, 2024

Decided May 24, 2024

**Background:** Judgment creditor sought to attach property owned by Republic of Argentina in partial satisfaction of judgment entered against Argentina. The United States District Court for the District of Columbia, John D. Bates, Senior District Judge, 2023 WL 11756873, denied application for attachment of property and writ of fieri facias. Judgment creditor appealed.

**Holdings:** The Court of Appeals, Henderson, Circuit Judge, held that:

(1) commercial leases that ceased 25 years previously and two brief sale listings over period of 20 years did not demonstrate regular course of commercial use of building, as required for commercial use exemption under Foreign Sovereign Immunities Act (FSIA) to apply, and

(2) Argentina did not waive "commercial activity" requirement under FSIA by providing consent "for the purposes of the Foreign Sovereign Immunities Act to the giving of any relief or the issue of any process."

Affirmed.

**1. International Law** ⚖=526, 530

Pursuant to the Foreign Sovereign Immunities Act (FSIA), the property of a foreign sovereign cannot be attached unless the sovereign waives immunity and the property is used for commercial activi-

ty in the United States. 28 U.S.C.A. § 1603.

**2. International Law** ⚖︎526

The determination as to whether a property is used for commercial purposes, as required for attachment for purposes of the Foreign Sovereign Immunities Act (FSIA), requires a court to both make factual findings concerning how the property was used and to reach legal conclusions concerning whether that particular use was for commercial purposes. 28 U.S.C.A. § 1603.

**3. Federal Courts** ⚖︎3567, 3603(2)

The Court of Appeals reviews a district court's determination for clear error with respect to factual findings and de novo as to legal conclusions and the application of law to fact.

**4. International Law** ⚖︎532

Execution immunity under the Foreign Sovereign Immunities Act (FSIA) is a default presumption that the judgment creditor must defeat at the outset. 28 U.S.C.A. § 1609.

**5. International Law** ⚖︎532

Only after a plaintiff defeats the presumption of execution immunity under the Foreign Sovereign Immunities Act (FSIA) does the burden shift to the sovereign to show by a preponderance of the evidence that the claimed exception does not apply. 28 U.S.C.A. § 1609.

**6. International Law** ⚖︎526

Commercial leases that ceased 25 years previously and two brief sale listings over period of 20 years, considered holistically and under totality of circumstances, did not demonstrate regular course of commercial use of building, as required for commercial use exemption for attachment under Foreign Sovereign Immunities Act (FSIA) to apply; although United States State Department did not recognize building as diplomatic and Argentina paid residential property taxes, those facts at most showed that property was not diplomatic, Argentina did not have to show some level of diplomatic use to avoid attachment, and property was not on market when judgment creditor filed suit. 28 U.S.C.A. §§ 1603(d), 1609.

**7. International Law** ⚖︎526

Property retains its immunity under Foreign Sovereign Immunities Act (FSIA) where its commercial uses, considered holistically and in context, are bona fide exceptions to its otherwise noncommercial use. 28 U.S.C.A. §§ 1603(d), 1609.

**8. Federal Courts** ⚖︎3733

Judgment creditor forfeited argument related to statutory provision exempting non-diplomatic property from immunity under Foreign Sovereign Immunities Act (FSIA) where "execution relates to a judgment establishing rights in property," on appeal of denial of application by judgment creditor for attachment of property and writ of fieri facias in petition seeking to attach property owned by Republic of Argentina in partial satisfaction of judgment, since provision was not cited by district court, creditor's opening brief, or Argentina's brief. 28 U.S.C.A. § 1610(a)(4)(B).

**9. International Law** ⚖︎526

Statutory provision exempting non-diplomatic property from immunity under Foreign Sovereign Immunities Act (FSIA) where "execution relates to a judgment establishing rights in property" was subject to "commercial activity" limitation. 28 U.S.C.A. §§ 1603(d), 1610(a)(4)(B).

**10. International Law** ⚖︎530

Argentina did not waive "commercial activity" requirement for attachment under Foreign Sovereign Immunities Act (FSIA) by providing consent "for the pur-

poses of the Foreign Sovereign Immunities Act" to the giving of any relief or the issue of any process; explicit incorporation of FSIA meant that most natural reading of clause was that Argentina's consent was subject to FSIA's restrictions, meaning all FSIA statutory defenses were available to Argentina in litigation, particularly where clause appeared in same sentence as clause waiving immunity "to the fullest extent permitted by the laws of such jurisdiction," which limited Argentina's waiver to FSIA provisions, and two clauses were linked by conjunction "and" and there was no comma separating them, suggesting they were closely related. 28 U.S.C.A. §§ 1603(d), 1609.

**11. International Law ⚖︎462**

Explicit waivers of sovereign immunity under Foreign Sovereign Immunities Act are narrowly construed in favor of sovereign and are not enlarged beyond what language requires so that foreign state will not be found to have explicitly waived its immunity unless it has clearly and unambiguously done so. 28 U.S.C.A. § 1605(a)(1).

**12. International Law ⚖︎462**

Argentina's consent "for the purposes of the Foreign Sovereign Immunities Act [FSIA] to the giving of any relief or the issue of any process" was not clear enough to amount to waiver of FSIA defenses, since clause was neither explicit promise nor clear indication of Argentina's intent to waive FSIA defenses. 28 U.S.C.A. § 1605(a)(1).

**13. International Law ⚖︎463**

Implied waiver under Foreign Sovereign Immunities Act is construed narrowly and requires that foreign state intended to waive its immunity. 28 U.S.C.A. § 1605(a)(1).

Appeal from the United States District Court for the District of Columbia (No. 1:22-mc-00070)

Anthony J. Costantini argued the cause for appellant. With him on the briefs was Drew T. Dorner.

Carmine D. Boccuzzi Jr. argued the cause for appellee. With him on the brief was Rathna J. Ramamurthi.

Before: Henderson, Circuit Judge, and Edwards and Ginsburg, Senior Circuit Judges.

Karen Lecraft Henderson, Circuit Judge:

**[1]** Bainbridge Fund Ltd. (Bainbridge) seeks to attach property owned by the Republic of Argentina (Argentina) in partial satisfaction of a judgment entered against Argentina in 2020. Pursuant to the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 *et seq.*, the property of a foreign sovereign cannot be attached unless the sovereign waives immunity and the property is used for commercial activity in the United States. The district court denied Bainbridge's application after evaluating Argentina's waiver of sovereign immunity in the bond giving rise to the judgment and finding that the property in question is not used for commercial activity.

Bainbridge appeals, arguing that the totality of the circumstances shows that the property is used for commercial activity and, alternatively, Argentina's waiver extended to an agreement not to invoke FSIA defenses, including the commercial activity requirement. But the facts show only aberrational commercial use over the last 25 years. In addition, Argentina's contractual waiver is subject to the FSIA's restrictions and does not amount to an explicit promise not to raise FSIA defens-

es. As detailed *infra*, we affirm the district court's denial of Bainbridge's application.

## I. BACKGROUND

On December 1, 2020, in the Southern District of New York, Bainbridge obtained a judgment against Argentina for $95,424,899.38. The judgment arose out of Argentina's default on a bond owned by Bainbridge and remains unpaid.

The bond giving rise to the judgment contained the following waiver of sovereign immunity by Argentina:

> To the extent that the Republic or any of its revenues, assets or properties shall be entitled . . . to any immunity from suit . . . from attachment in aid of execution of judgment, from execution of a judgment or from any other legal or judicial process or remedy . . . the Republic has irrevocably agreed not to claim and has irrevocably waived such immunity to the fullest extent permitted by the laws of such jurisdiction and consents generally for the purposes of the Foreign Sovereign Immunities Act to the giving of any relief or the issue of any process in connection with any Related Proceeding or Related Judgment . . . .

J.A. 129.

Bainbridge now seeks to attach and execute upon the Chancery Annex, a building owned by Argentina and located at 2136 R Street NW, Washington, D.C. The property was used to "house both diplomats and commercial tenants" several decades ago but since 1997 has been "uninhabited and in a state of disrepair." *TIG Ins. Co. v. Republic of Argentina*, 967 F.3d 778, 780 (D.C. Cir. 2020) (discussing the Chancery Annex). The property is subject to residential property taxes. The Chancery Annex is used to store diplomatic files and access to the building is limited to members of Argentina's Ministries of Foreign Affairs and Defense. It is allocated to the Argentine Ministry of Foreign Affairs, International Trade & Worship and displays the Argentine flag and seal.

The Chancery Annex is not currently for sale but Argentina has listed the property twice. Both times Argentina attempted to sell the property, creditors unsuccessfully sought attachment. Argentina first listed the property in 2003 and removed the listing from the market in January 2004. *NML Cap., Ltd. v. Republic of Argentina*, 2005 WL 8161968, at *14 (D.D.C. Aug. 3, 2005). In August 2005, the district court reviewed the property's history and quashed the attempted attachment because it was no longer on the market and "there [was] no evidence to support Argentina's present intent to sell." *Id.* Argentina relisted the property in 2018 and received multiple offers. *TIG Ins. Co.*, 967 F.3d at 780. A creditor filed a writ to attach the property and Argentina took the listing down three days later. *Id.* The *TIG Insurance* proceedings are ongoing. *See TIG Ins. Co. v. Republic of Argentina*, 2022 WL 3594601 (D.D.C. Aug. 23, 2022), *appeal filed*, No. 23-7064 (D.C. Cir.).

In July 2022, Bainbridge filed its application seeking both attachment of the Chancery Annex to satisfy the judgment in part and a writ of *fieri facias*. Pursuant to the FSIA, "property in the United States of a foreign state shall be immune from attachment" unless the property falls into one of the Act's enumerated exceptions. 28 U.S.C. § 1609. The exception at issue here provides that property "used for a commercial activity in the United States" is not immune from attachment if "the foreign state has waived its immunity from attachment in aid of execution." 28 U.S.C. § 1610(a)(1). We look to the totality of the circumstances at the time the application

was filed to determine whether a property is "used for a commercial activity." *TIG Ins. Co.*, 967 F.3d at 782, 788.

The district court denied Bainbridge's application. It held that Section 1610(a)(1) contains two separate requirements for attachment: (1) the building must be "used for a commercial activity" and (2) the foreign state must waive immunity. The parties agreed that Argentina had waived immunity but disputed whether the Chancery Annex is used for a commercial activity. The district court found that the building's commercial uses were in the distant past and, at the time of filing, the building had some limited diplomatic uses and was otherwise in a state of disrepair. Considering the totality of the circumstances, the district court concluded that Bainbridge failed to meet its burden to show that the property was used for commercial activity.

## II. ANALYSIS

**[2, 3]** The determination as to whether a property is used for commercial purposes "requires a court to both make factual findings concerning how the property was used and to reach legal conclusions concerning whether that particular use was 'for commercial purposes.'" *Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361, 368 (5th Cir.), *decision clarified on reh'g*, 389 F.3d 503 (5th Cir. 2004). We review the district court's determination for clear error with respect to factual findings and *de novo* as to legal conclusions and the application of law to fact. *Id.*; *Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 197 (D.C. Cir. 2004).

**[4, 5]** At this stage in the proceedings, Bainbridge bears the burden of persuasion to show that the FSIA authorizes attachment. Execution immunity is a "'default presumption' that the judgment creditor must defeat at the outset." *Weinstein v. Islamic Republic of Iran*, 831 F.3d 470, 482 (D.C. Cir. 2016) (quoting *Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 800 (7th Cir. 2011)), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 138 S.Ct. 816, —— L.Ed.2d —— (2018); *accord TIG Ins. Co.*, 967 F.3d at 781. Only after Bainbridge defeats the presumption of execution immunity does the burden shift to the sovereign to show by a preponderance of the evidence that the claimed exception does not apply. *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013).

### A.

**[6]** Bainbridge argues that under the totality of the circumstances, the Chancery Annex satisfies the FSIA's "commercial activity" requirement. Bainbridge points to two kinds of commercial use the property has been put to. First, in the 1980s and 1990s, Argentina leased the property to commercial tenants, an "unquestionably commercial activity." *NML Cap., Ltd.*, 2005 WL 8161968, at *14 (discussing the Chancery Annex). Second, Argentina contracted with a real estate agency and listed the property for sale in 2003–2004 and 2018. *See Friedman v. Gov't of Abu Dhabi*, 464 F. Supp. 3d 52, 70 (D.D.C. 2020) ("Contracts for services are generally considered commercial activities when entered into in the United States." (quotation omitted)). Bainbridge also claims that the district court ignored important facts in the record: the U.S. State Department has not considered the property diplomatic in nature for "many years," J.A. 184; the District of Columbia designates the property as "residential," J.A. 112; and Argentina has paid residential property taxes since at least 2005.

Reviewing these facts and considering the totality of the circumstances, we find

no error in the district court's conclusion that the Chancery Annex was not "used for commercial activity" at the time of filing.

[7] As used in the FSIA, "commercial activity" means "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). Our precedent instructs that the phrase "used for a commercial activity" is "best interpreted as an adjectival phrase characterizing the kind of property that may be attached" rather than indicating any particular time frame for assessing the property's use. *TIG Ins. Co.*, 967 F.3d at 786. The property "retains its immunity protection where its commercial uses, considered holistically and in context, are bona fide exceptions to its otherwise noncommercial use." *Id.* at 786 (quoting *Af-Cap Inc.*, 383 F.3d at 370). We must avoid "an artificially narrow lens" that would "allow[ ] one-time or aberrational uses to dictate the fate of the property." *Id.*; *see also id.* at 788 ("[J]ust as they need to steer clear of relying on the purely future commercial uses . . . , district courts examining the totality of the circumstances should avoid finding speculative or aberrational commercial uses, or uses in the distant past, sufficient to satisfy the 'used for a commercial activity' requirement.").

When Bainbridge filed its writ in July 2022, the Chancery Annex was allocated to an Argentine ministry, displayed the Argentine flag and seal, restricted access to certain Argentinian government officials, stored diplomatic files and was otherwise in a state of disrepair. It was listed for sale briefly four years earlier, as well as in 2003, and had not housed any tenants since 1997. The overall factual picture shows that, to the extent the Chancery Annex is being used for any purpose, it has some degree of diplomatic use and infrequent commercial use. There was plainly no regular course of commercial conduct in 2022 and the only particular commercial acts were either in the distant past (the commercial leases ending in 1997) or aberrational (the two sales listings). Commercial leases that ceased twenty-five years ago and two brief sale listings over a period of twenty years fall far short of demonstrating commercial use "considered holistically and in context." *See TIG Ins. Co.*, 967 F.3d at 786 (quoting *Af-Cap, Inc.*, 383 F.3d at 370).

[8, 9] Bainbridge places weight on the U.S. State Department no longer recognizing the Chancery Annex as diplomatic and Argentina's payment of residential property taxes, but those facts show at most that the property is not *diplomatic* and do nothing to show *commercial* use—the relevant inquiry here. The Chancery Annex may be used for nondiplomatic and noncommercial purposes and remain immune from attachment under the plain text of the statute, as execution immunity remains intact so long as the property is not "used for a commercial activity." *See* 28 U.S.C. § 1610(a). The property would be immune from attachment if it were residential or unused by Argentina for any purpose. Bainbridge offers no support for its claim that Argentina must show some level of diplomatic use.[1]

---

1. Bainbridge cites for the first time in its reply brief Section 1610(a)(4)(B), a provision exempting from immunity nondiplomatic property where the "execution relates to a judgment establishing rights in property." Any argument related to this subsection is forfeited, as it was not cited by the district court, Bainbridge's opening brief or Argentina's brief. *See, e.g., Texas v. United States*, 798 F.3d 1108, 1115-16 (D.C. Cir. 2015). In any event, Section 1610(a)(4)(B) is subject to the same "commercial activity" limitation as (a)(1) so it would not change our analysis.

Bainbridge also emphasizes Argentina's alleged gamesmanship in removing the sale listing in 2018 after a judgment creditor filed suit to attach it and keeping the property off the real estate market since then. But as the district court explained, Argentina's actions in 2018 are largely irrelevant to our analysis because the Chancery Annex was not on the market when Bainbridge filed suit. And Bainbridge provides no evidence for its suggestion that keeping the property off-market is a deliberate ploy to avoid attachment.

To the extent the Chancery Annex was being used at all before Bainbridge filed its suit, Argentina used it primarily to store diplomatic files. The handful of commercial acts took place long before filing and do not control the holistic character of the property. The totality of the circumstances thus shows that the Chancery Annex is not a property "used for commercial activity" under the FSIA.

### B.

**[10]** In the alternative, Bainbridge argues that even if the Chancery Annex is not "used for commercial activity," Argentina has waived this requirement. Bainbridge reads the relevant language in the bond as containing two distinct clauses: (1) one clause in which Argentina "consent[ed] generally for the purposes of the [FSIA] to the giving of any relief . . . in connection with any . . . Related Judgment" (which Bainbridge terms the "Consent Clause"); and (2) one clause in which Argentina "irrevocably agreed not to claim and . . . irrevocably waived such immunity to the fullest extent permitted by the laws of such jurisdiction" (which Bainbridge terms the "Waiver Clause"). J.A. 129. Bainbridge contends that only the Waiver Clause is limited by the FSIA, while the Consent Clause makes no reference to the laws of the jurisdiction or other statutory restrictions and instead consents for the purposes of the FSIA, meaning it amounts to an agreement to forego invoking FSIA defenses.

The relevant contract language, however, shows that Argentina did not waive the "commercial activity" requirement under Section 1610(a). The so-called Consent Clause provides consent "*for the purposes of the Foreign Sovereign Immunities Act*." J.A. 129 (emphasis added). The explicit incorporation of the FSIA means that the most natural reading of the clause is that Argentina's consent is subject to the FSIA's restrictions, meaning all FSIA statutory defenses are available to Argentina in litigation. This reading is supported by the fact that the Consent Clause appears in the same sentence as the clause waiving immunity "to the fullest extent permitted by the laws of such jurisdiction," J.A. 129, which Bainbridge admits limits Argentina's waiver to FSIA provisions. The two clauses are linked by the conjunction "and" and there is no comma separating them, suggesting they are closely related. Bainbridge's reading strains credulity by insisting that two clauses in the same sentence and in close proximity have vastly different meanings and legal effects, despite the fact that both clauses refer to laws limiting Argentina's agreement to subject itself to U.S. law.

This reading accords with how other courts have interpreted identical contractual language. The Second Circuit in *EM Ltd. v. Republic of Argentina* considered a bond in which Argentina similarly agreed to "consent[ ] generally for the purposes of the [FSIA]." 473 F.3d 463, 468 (2d Cir. 2007). In response to EM Ltd.'s argument that certain foreign assets should be immune because Argentina "affirmatively pledged *not to assert* such immunity in proceedings to enforce the judgment," the court found that "the scope of [Argenti-

na's] agreement not to claim immunity is coextensive with its waiver of immunity; both reach only to the 'extent permitted under the laws of [the] jurisdiction.'" *Id.* at 481 n.19. And when Bainbridge raised its Consent Clause argument in separate proceedings against Argentina in the Southern District of New York, the district court had little trouble concluding that the language "clearly incorporat[es] the FSIA into the consent" and so the "best reading is that this provision too remains cabined by the statutory requirements of the FSIA." *Bainbridge Fund Ltd. v. Republic of Argentina*, 690 F.Supp.3d 411, 419 (S.D.N.Y. Sept. 6, 2023).

[11–13] Even if Bainbridge's reading is a possible construction of the contractual language, any agreement not to raise FSIA defenses is not clear enough to amount to a waiver. Foreign states may waive immunity "either explicitly or by implication." 28 U.S.C. § 1605(a)(1). "[E]xplicit waivers of sovereign immunity are narrowly construed in favor of the sovereign and are not enlarged beyond what the language requires" so that a "foreign state will not be found to have explicitly waived its immunity unless it has clearly and unambiguously done so." *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 691 (D.C. Cir. 2022) (cleaned up). Implied waiver under the FSIA is also construed narrowly and requires that the foreign state intended to waive its immunity. *Id.* The Consent Clause is neither an explicit promise nor a clear indication of Argentina's intent to waive FSIA defenses. *See EM Ltd.*, 473 F.3d at 481 n.19 (Argentina did not make an "explicit promise not to assert any of the non-waivable protections of the FSIA in attachment proceedings"); *Bainbridge*, 690 F.Supp.3d at 419 (same). Because the bond does not evince an explicit promise or intent not to raise FSIA defenses, we do not address whether the "commercial activity" requirement of the FSIA is waivable, which is an issue of first impression in our circuit.

\* \* \*

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered.*



**UNITED STATES of America, Appellee**

**v.**

**Thomas WEBSTER, Appellant**

**No. 22-3064**

United States Court of Appeals, District of Columbia Circuit.

Argued February 6, 2024

Decided May 28, 2024

**Background:** Defendant was convicted in the United States District Court for the District of Columbia, Amit P. Mehta, J., of assaulting, resisting, or impeding officers using a dangerous weapon, civil disorder, entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon, engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, and act of physical violence in the Capitol grounds or buildings, in connection with the January 6, 2021 attack on the United States Capitol. Defendant appealed.